IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN DAVID ROWNAK                                                                    PLAINTIFF

v.                                       CIVIL NO. 11-5117

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, John David Rownak, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current application for DIB on May 29, 2008, alleging an inability to work since May 1, 2000,[1] due to an obsessive compulsive disorder, severe clinical depression, and adult attention deficit hyperactivity disorder (ADHD). (Tr. 45-46, 109). For DIB purposes, Plaintiff maintained insured status through December 31, 2005. (Tr. 12, 64). An administrative hearing was held on March 12, 2009, at which Plaintiff appeared with counsel and

---

[1] At the administrative hearing before the ALJ on March 12, 2009, Plaintiff through his counsel amended his alleged onset date to January 1, 2004. (Tr. 235).

AO72A
(Rev. 8/82)

testified. (Tr. 223-250).

By written decision dated September 1, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found Plaintiff had the following severe impairments: depression, anxiety, adult ADHD, and obsessive-compulsive disorder. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that prior to the expiration of his insured status, Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work where interpersonal contact is incidental to the work performed, such as assembly work.

(Tr. 16). With the help of a vocational expert and Plaintiff's counsel's concession about available jobs, the ALJ determined Plaintiff could perform jobs in the national economy. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 4, 2011. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 6,7).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by

AO72A
(Rev. 8/82)

substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

### III.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled because (1) the ALJ erred in finding Plaintiff could perform a full range of work at all exertional levels; (2) the ALJ erred in disregarding the opinion and findings of a primary treating physician; (3) the ALJ erred in applying the Grids; and (4) the ALJ erred in failing to fully and fairly develop the record. Defendant argues substantial evidence supports the ALJ's determination.

#### A.   Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2005. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of January 1, 2004, his amended alleged onset date of disability, through December 31, 2005, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements). "New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." Moore v. Astrue, 572 F.3d 520, 525 (8th Cir. 2009)(citing Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997) (holding that claimant's non-disabling knee condition that later deteriorated into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits)).

**B.     The ALJ's RFC determination and treating physician opinion:**

Plaintiff argues that the ALJ erred in finding Plaintiff could perform a "full range of work at all exertional levels." Defendant argues that substantial evidence of record supports the ALJ's RFC finding.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain

are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, the opinion of Plaintiff's treating physician, Plaintiff's subjective complaints, and his medical records when the ALJ determined that prior to Plaintiff's date last insured, Plaintiff could perform unskilled work, at all exertional levels, where interpersonal contact is incidental to the work performed.

A review of the record revealed that Plaintiff initially alleged disability due to mental impairments. Plaintiff did not allege a physical impairment and the evidence of record failed to show that Plaintiff had any limitation due to a physical impairment. Thus, the Court finds substantial evidence to support the ALJ's determination that Plaintiff could perform work at all exertional levels.

Regarding Plaintiff's mental impairments, the medical evidence dated prior to January 1, 2004, Plaintiff's amended alleged onset date, revealed that Plaintiff had been diagnosed and treated for a major depressive affective disorder, recurrent, moderate, by Dr. Stephen C. Dollins. (Tr. 186-195).

AO72A
(Rev. 8/82)

The evidence revealed that during the relevant time period of January 1, 2004, through December 31, 2005, Plaintiff saw Dr. Dollins on three occasions. On March 5, 2004, Plaintiff reported that he had been ill off and on since around Thanksgiving. (Tr. 185). Plaintiff reported he had been depressed at times. Upon observation, Dr. Dollins noted that Plaintiff's appearance was neat and alert; that Plaintiff's thinking was coherent and logical; and that Plaintiff's memory was intact. Dr. Dollins noted that Plaintiff tended to have cycles where his mood was more down every one to two years. Plaintiff was diagnosed with major depressive affective disorder, recurrent episode, moderate. Dr. Dollins recommended increasing Plaintiff's Effexor dosage.

On November 12, 2004, Plaintiff reported that his insomnia problem was worsening. (Tr. 184). Dr. Dollins noted Plaintiff was having problems with some depression/anxiety, and that these problems were secondary to Plaintiff's sleeping problem. Dr. Dollins noted that Plaintiff's thoughts were coherent and logical and that Plaintiff's memory was intact. Plaintiff was diagnosed with major depressive affective disorder, recurrent episode, moderate. Dr. Dollins started Plaintiff on Ambien to help with his sleep. Plaintiff was to return for a follow-up appointment in three months.

On July 22, 2005, Plaintiff reported that he had been feeling "not too well." (Tr. 183). Dr. Dollins noted that Plaintiff reported having difficulty with both his short-term and long-term memory. Plaintiff reported that his motivation and energy had been poor. Plaintiff also thought he did better with the use of Ritalin. Dr. Dollins noted that Plaintiff's mood/affect was anxious; that Plaintiff's thinking was coherent and logical; and that Plaintiff's memory was intact. Plaintiff was diagnosed with major depressive affective disorder, recurrent episode, moderate. Plaintiff denied side effects to medication. Dr. Dollins also started Plaintiff on Ritalin. Plaintiff did not

seek treatment again until October of 2006, almost a year after his insured status had expired. At that time Plaintiff reported that his depression had been worse. (Tr. 182). Dr. Dollins noted that Plaintiff had been erratically compliant with taking his medications.

In determining Plaintiff's RFC, the ALJ addressed the July 13, 2007, letter written by Dr. Dollins wherein, Dr. Dollins stated that he had been treating Plaintiff for depression, obsessive-compulsive disorder and adult ADHD for the past nine years. (Tr. 220). Dr. Dollins noted Plaintiff had persistent symptoms despite treatment which limited Plaintiff's ability to work. Dr. Dollins stated that he did not anticipate any major change in this in the future, and that it would be unlikely there would be any significant change in Plaintiff's ability to improve his financial situation.

The ALJ gave three reasons for not giving Dr. Dollins letter more significant weight. The ALJ first pointed out that it was the province of the Commissioner, and not that of the a treating physician to determine Plaintiff's employability. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007)(holding that a treating physician's opinion that a claimant is disabled and cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination). The ALJ also noted that Dr. Dollins letter stated no specific limitations regarding Plaintiff's capabilities. Finally, the ALJ noted that Dr. Dollins letter was inconsistent with his treatment notes. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in the case record); Dixon v. Barnhart, 353 F.3d

602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole). A review of the evidence during the relevant time period revealed that Dr. Dollins noted Plaintiff's thinking was logical and coherent and that his memory was intact.

In determining that Plaintiff could perform unskilled work the ALJ also noted the opinions of the non-examining medical consultants. On July 24, 2008, Dr. Dan Donahue, completed a Psychological Review Technique Form (PRTF), and opined that prior to Plaintiff's date last insured, Plaintiff had a severe mental impairment. (Tr. 200-213). Dr. Donahue opined that Plaintiff had moderate restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; no episodes of decompensation, each of extended duration. Dr. Donahue's notes stated:

> 40-year-old claimant who is alleging mental problems only. he (sic) receives his treatment from a private psychiatrist, Dr. Dollins. However, he sees his psychiatrist very irregularly. The last available note is dated May 29, 2008. Prior to that he had a contact in March 2007 and before that July 2005. Thus, since July 2005, only to [sic] contact. At the last visit on May 29, 2008 claimant reports some moderately significant symptoms. There is no indication of marked and severe mental disorder an[d] certainly no symptoms consistent with this claimant's allegations.
>
> Unskilled.

(Tr. 212). Dr. Donahue further opined that:

> the claimant is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete. (Unskilled).

(Tr. 198). On September 2, 2008, after reviewing the evidence of record, Dr. Jerry R. Henderson, a non-examining medical consultant, affirmed Dr. Donahue's opinion as written. (Tr. 216).

AO72A
(Rev. 8/82)

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling prior to the expiration of his insured status, the evidence of record does not support this conclusion.

As addressed above, the medical evidence of record revealed that Plaintiff was diagnosed with a major depressive affective disorder, and that he sought treatment for the impairment on three occasions during the time period of January 1, 2004, through December 31, 2005. In assessing Plaintiff's credibility the ALJ pointed out that the medical evidence revealed that Plaintiff had been "erratically compliant" with taking his medication. See Dunahoo v. Apfel, 241

F.3d 1033, 1037 (8th Cir.2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain). The ALJ also found Plaintiff's credibility to be in question considering the fact that Plaintiff, who originally alleged on onset date of January 1, 2000, testified at the administrative hearing that he performed some accountant-type work in 2003 and 2004, but did not report this income on a W-2, but rather had the income paid to an S Corporation that Plaintiff had established.

With regard to the testimony of Plaintiff's father and the letter of Plaintiff's friend, the ALJ properly considered this testimony but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, prior to his date last insured, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible

### D. Use of the Medical Vocational Guidelines (Grids):

Plaintiff argues that the ALJ improperly used the Grids when determining Plaintiff could perform work in the national economy. Defendant argues that Plaintiff's counsel conceded during the administrative hearing before the ALJ on March 2009, that a significant number of jobs existed in the national economy for a person with the RFC to perform a full range of unskilled work at all exertional levels where interpersonal contact is incidental to the work performed.

A review of the hearing transcript revealed the following:

ALJ:   Counsel, I think your issue here is going to come down to an ability to

> sustain work. Would you concede that at the unskilled level with no exertional limitations, there are a wide variety of jobs that are available?
>
> ATTY: Absolutely.

(Tr. 245). As a follow-up question, the ALJ asked the following:

> ALJ: Okay, All right, Mr. Odom, I did just want to clarify one thing for you because I asked you if you could concede that there are significant unskilled jobs but actually what I should have narrowed it down to were unskilled work where interpersonal contact is only incidental to the work performed?
>
> ATTY: Right.

(Tr. 249).

As addressed above, the record supports the ALJ's determination that Plaintiff could perform unskilled work at all exertional levels where interpersonal contact is incidental to the work performed. While the ALJ used the Grids as a framework for making her decision, the ALJ relied upon the concession of Plaintiff's counsel that a significant number of jobs were available for an individual with Plaintiff's determined RFC. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that prior to the expiration of Plaintiff's insured status, there were a significant number of jobs available in the national economy for Plaintiff to perform.

### E. Fully and Fairly Develop the Record:

Finally, the Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is necessary for an informed decision), the record before the ALJ contained the evidence

required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

## IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 14th day of June, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE